# CHARLESTON

Campbell and Others *v.* Doolittle and Others.

<table>
<tr><td>58</td><td>317</td></tr>
<tr><td>164</td><td>324</td></tr>
</table>

Submitted October 18, 1905.    Decided November 14, 1905.

1.  Judge—*Power in Vacation—Prohibition.*
    The last clause of section 1, of Chapter 110, of the Code of 1899, authorizing the issuance, by a judge of the Supreme Court of Appeals, in the vacation of said Court, of a rule to show cause why the writ of prohibition shall not issue, is not unconstitutional. (p. 318.)

2.  Municipal Corporation—*Removal of City Officers.*
    The action of the council of a city or town in removing from office officers who are, by law, removable, by such body, at pleasure, without notice and without cause, is not judicial or *quasi*-judicial in character, although involving discretion; but only ministerial or administrative.   (p. 320.)

3.  Prohibition—*Removal of City Officers.*
    In attempting to interfere with such action by prohibition, a circuit court acts without jurisdiction.   (p, 320.)

Petition by C. W. Campbell and others for writ of prohibition against E. S. Doolittle, judge, and others.

*Writ allowed.*

Holt & Duncan, Wallace & Fitzpatrick, Geo. I. Neal and W. K. Cowden, for petitioners.

Lace Marcum, Geo. J. McComas, E. E. Williams, and C. E. Hogg, for respondents.

Poffenbarger, Judge:

Five members of the police force of the city of Huntington obtained from the judge of the circuit court of Cabell coun-

ty, a rule against the council of said city, to show cause why a writ of prohibition should not issue against that body to prevent it from removing them from office by the votes of a smaller number of members thereof than is required by the charter in such case.    Afterwards, C. W. Campbell and five others, all members of said city council, obtained from a judge of this Court, a rule requiring the judge of said circuit court to appear in this Court to show cause against the issuance of a writ of prohibition, to restrain him from further proceeding upon the said rule, so issued by him.

The full membership of said council is twelve, but one had resigned, and a controversy was pending as to whether his successor had been elected.    On the occasion of the removal of said policemen from office, another member was absent, and the removal was effected by a vote of six to four. The application for the prohibition against the council was based upon alleged illegality of the action taken, it being claimed that the charter required the votes of seven members to effect such removal, a majority of the whole number of councilmen required by the charter.

As ground for discharging the rule and dismissing the petition, unconstitutionality of the statute, authorizing the awarding of such process in the vacation of the court is advanced.    The Constitution merely confers upon this Court original jurisdiction is cases of prohibition, without indicating the particular mode of its exercise.    In doing so, it impliedly conferred upon the Court all the powers inherent in, and necessary to the exercise of, such jurisdiction, and among these is the awarding of process to bring the parties before the Court.    Citation in every legal proceeding is the first, and an indispensible, step.    Power to give it must exist in the Court, else the exercise of jurisdiction is impossible.

A law of nature and necessity, as well as of convenience, prevents the court from remaining in continuous session. The Constitution does not contemplate it.    But it guarantees protection to life, liberty and property, and contemplates the exercise, through the courts, for the accomplishment of this great purpose, the chief desideratum of all government, the functions and powers which, by the common law, are inherent in the courts of the land, and especially of the extraordinary writs, designed for the maintenance of regularity and

due process of law in the proceedings of the inferior courts. For these vital purposes, it declares that "The courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have a remedy by due course of law; and justice shall be administered without sale, denial or delay." Art. III, § 17. The power to award process, the incipient action in every exercise of jurisdiction, must exist somewhere at all times, else the courts are not open in obedience to this mandate.

Long before the adoption of the Constitution, the common law, and its principles obtained here, permeating, and interwoven with every fiber of, our political and social compact. The great guarantys just quoted from the Constitution are themselves part of that law, having been taken from *Magna Carta*, into which they had been incorporated as the ancient safe-guards of liberty, long antedating in origin The Great Charter.

For what common law powers courts and judges have, we look to the methods of procedure of the old English courts. Prohibition, *mandamus* and *habeas corpus* were in constant employment, especially in the great struggles for the maintenance of the supremacy of the common law over the Roman civil and ecclesiastical systems of law, and the constitution of the realm against encroachment of the sovereign.

For these, as well as other remedies, the courts were always open, and a means of redress at hand for every injury, however suddenly it might occur. Process was ordinarily issued by the clerks of the courts, and extraordinary writs by the law courts, when in session, and, when not, resort might be had to the court of chancery for prohibition. 17 Vin. Abr. 547; *Iveson* v. *Harris*, 7 Ves. 257; *In Re Bateman*, 9 Eq. Cas. L. R. 660; *Saunderson* v. *Cloggett*, 1 P. Wms. 663; *Montgomery* v. *Blair*, 2 Sch. & Lefr. 136; *In Re Foster*, 24 Beav. 428; Anon 1 P. Wms. 476. From an alteration in the number and arrangement of courts, no inference of intent to deprive the jurisdiction by prohibition of its virtue and efficacy, arises, and its efficacy exists wherever original and general jurisdiction by that remedy is lodged. Such jurisdiction having been conferred upon this Court, it takes necessarily the power to award through its judges in vacation process to bring the cause within the cognizance of the

Court, so that the remedy may be always available. Upon application of these principles, the Supreme Court of Missouri came to this conclusion in *State ex rel* v. *Rombauer*, 104 Mo. 619, and we think they fully sustain it.

Prohibition can only go against judicial action, or quasi-judicial action. *Fleming* v. *Commissioners*, 31 W. Va. 609; *Brazie* v. *Commissioners*, 25 W. Va. 213; *Hassinger* v. *Holt*, 47 W. Va. 348; *Hartigan* v. *Board of Regents*, 49 W. Va. 14. Those policemen were removable at the pleasure of the council, without notice and without cause being shown. Acts. 1901, chapter 150, paragraphs 15 and 19; Acts. 1905, chapter 8, section 1. No element of judicial power is perceived in this. The function is, in our opinion, purely administrative or ministerial. That the exercise of discretion enters into it, does not make it judicial. There is judicial and non-judicial, or legislative and executive, discretion. *County Court* v. *Boreman*, 34 W. Va. 87; *County Court* v. *Armstrong*, *Id.* 326, 329; *Town of Davis* v. *Filler*, 43 W. Va. 413; *Richards* v. *Clarksburg*, 30 W. Va. 491. Prohibition will not go against such action, though discretionary. *Williamson* v. *County Court*, 56 W. Va. 38.

As, under no circumstances, could such action be controlled by prohibition, said circuit court acted without jurisdiction in awarding the rule, and, as upon application, the judge thereof refused to discharge it, a writ of prohibition must go from this Court against him and his co-respondents, the relators in his court, according to the prayer of the petition, with a judgment for costs to the relators here against all the respondents except the said judge.

*Writ awarded.*